**JOHNSON FISTEL, PLLP**
Frank J. Johnson (SBN 174882)
FrankJ@johnsonfistel.com
Kristen O'Connor, Esq. (SBN 305113)
KristenO@johnsonfistel.com
Anthony E. Mance (SBN 267946)
AnthonyM@johnsonfistel.com
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063

*Counsel for Plaintiff Sophia Cohen*
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SOPHIA COHEN, Derivatively on Behalf of Nominal Defendant AEVEX CORP.,

Plaintiff,

v.

BRIAN RADUENZ, ROGER WELLS, BRADLEY FELDMANN, MATTHEW M. KLEIN, BRANDON LEVITAN, BENJAMIN SPACAPAN, TODD BOOTH, MADISON DEARBORN PARTNERS, LLC, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., and JEFFERIES LLC,

Defendants,

-and-

AEVEX CORP.,

Nominal Defendant.

Case No. '26CV5266 W BJW

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Sophia Cohen ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Aevex Corp. ("Aevex" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' breaches of fiduciary duties, waste, unjust enrichment, fraud, and violations of federal securities laws. Plaintiff's allegations are based upon her personal knowledge as to himself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Aevex with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I. NATURE OF THE ACTION

1. This is a shareholder derivative action brought by Plaintiff on behalf of nominal defendant Aevex Corp. against certain current and former officers and directors for breaches of fiduciary duties and violations of federal securities laws. As a direct result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other shareholders have suffered significant losses and damages. Moreover, these wrongs resulted in damages to Aevex's goodwill and business reputation and the misconduct has exposed the Company to substantial potential liability for violations of state and federal law. In addition, the Company is now the subject of a securities class action filed in this District on behalf of investors who purchased Aevex's shares, *Rosenberg v. Aevex Corp. et al.*, Case No. 3:26-cv-04779-TWR-SBC (S.D. Cal.) (the "Securities Class Action").

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act (15 U.S.C. §77v).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because: (i) Aevex is headquartered in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this jurisdiction; and (iii) the Individual Defendants (defined herein) have received substantial compensation in this District by doing business here and engaging in numerous activities that have had an effect in this District.

## III. PARTIES

**Plaintiff**

6. Plaintiff Sophia Cohen owned Aevex stock during the wrongdoing alleged herein, during all times relevant to this complaint, and continues to own Aevex stock.[1] Plaintiff is a citizen of Ohio.

**Nominal Defendant**

7. Nominal Defendant Aevex is a Delaware corporation with principal executive offices located at 440 Stevens Avenue, Suite 150, Solana Beach, CA. The Company's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "AVEX."

**Individual Defendants**

8. Defendant Brian Raduenz ("Raduenz") has served as Executive Chairman of Board since October 2025, and previously served as Aevex's Chief Executive Officer ("CEO") from 2017 through October 2025. Raduenz signed the Initial Public Offering ("IPO") Offering Documents that, as discussed herein, were materially false

[1] Plaintiff has owned Aevex stock since April 2026.

and/or contained material misstatements and omissions. He is a named defendant in the Securities Class Action. Upon information and belief, Defendant Raduenz is a citizen of California.

9. Defendant Roger Wells ("Wells") has served as a director of the Company during the Relevant Period. Wells has also served as Aevex's CEO since October 2025, and previously served as Aevex's President from April 2025 through October 2025. According to the IPO Offering Documents, Wells' compensation is tied to "his achievement of targets set annually in coordination with [Madison Dearborn Partners, LLC ("Madison")]." Wells signed the IPO Offering Documents which, as discussed herein, were materially false and/or contained material misstatements and omissions. He is a named defendant in the Securities Class Action. Upon information and belief, Defendant Wells is a citizen of Alabama.

10. Defendant Bradley Feldmann ("Feldmann") has served as a director of the Company since around the time of its April 2026 IPO and prior to that was a Director Nominee during the Relevant Period.[2] Feldmann also serves as a member of the Company's Audit Committee ("Audit Committee") and as a member of its Compensation and Nominating Committee ("C&N Committee"). Upon information and belief, Defendant Feldmann is a citizen of California.

11. Defendant Matthew M. Klein ("Klein") has served as a director of the Company since around the time of its April 2026 IPO and prior to that was a Director Nominee during the Relevant Period. Klein also serves as a member of the Company's Audit Committee.

12. Defendant Brandon Levitan ("Levitan") has served as a director of the Company since around the time of its April 2026 IPO and prior to that was a Director Nominee during the Relevant Period. Levitan also serves as Chair of the Company's C&N Committee. Upon information and belief, Defendant Levitan is a Managing

[2] The "Relevant Period" is defined herein as April 17, 2026 through present.

Director at Madison and is a citizen of Illinois.

13. Defendant Benjamin Spacapan ("Spacapan") has served as a director of the Company since around the time of its April 2026 IPO and prior to that was a Director Nominee during the Relevant Period. Spacapan also serves as a member of the Company's Audit Committee. Upon information and belief, Defendant Spacapan is a Vice President at Madison and is a citizen of Illinois.

14. Defendant Todd Booth ("Booth") has served as Aevex's Chief Financial Officer ("CFO") since September 2025. Booth signed the IPO Offering Documents which, as discussed herein, were materially false and/or contained material misstatements and omissions in violation of the federal securities laws. He is a named defendant in the Securities Class Action. Upon information and belief, Defendant Booth is a citizen of California.

15. Defendants Raduenz, Wells, Feldmann, Klein, Levitan, Spacapan, and Booth are collectively referred to herein as the "Individual Defendants."

16. Defendants Raduenz, Wells, Feldmann, Klein, Levitan, and Spacapan are collectively referred to herein as the "Director Defendants."

17. Defendants Raduenz, Wells, and Booth are collectively referred to herein as the "Securities Defendants."

18. Defendants Feldmann, Klein, and Spacapan are referred to herein as the "Audit Committee Defendants."

19. Defendant Madison is a Chicago, Illinois-based private equity firm. Immediately prior to the IPO, Madison owned 100% of Aevex's common stock, and after completion of the IPO, Madison continued to own 77.5% of Aevex's common stock. According to the IPO Offering Documents, Aevex is "a controlled company" by virtue of Madison's outsized ownership of Aevex's common stock, and following the IPO, Madison has the right to designate "100% of the total number of directors comprising [Aevex's] Board" provided Madison's Class A common stock holdings do not fall below "40% of the total amount of shares of Class A common stock [Madison]

owns as of the date of this offering." As a result of Madison's ownership stake, it was able to compel Aevex and the Individual Defendants to include materially false and/or misleading statements and omissions in the IPO Offering Documents. Current Directors Madison is a named defendant in the Securities Class Action.

20. Defendants Goldman Sachs & Co. LLC, BofA Securities, Inc., and Jefferies LLC (collectively, the "Underwriters") served as lead underwriters for the IPO and, shortly thereafter, for a secondary public offering ("SPO") and sold millions of shares of Aevex common stock in both offerings, collectively sharing in over $30 million in fees and commissions for soliciting and selling Aevex's shares to the investing public. They served as the underwriters of the two offerings at issue in this Action and shared more than $30 million in fees collectively. The Underwriters are named defendants in the Securities Class Action.

## IV. DUTIES OF THE INDIVIDUAL DEFENDANTS

21. By reason of their positions as officers, directors, and/or fiduciaries of Aevex and because of their ability to control the business and corporate affairs of Aevex, at all relevant times, the Individual Defendants owed Aevex and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Aevex in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Aevex and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Aevex and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

22. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Aevex, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Aevex, each of the

Individual Defendants had knowledge of material non-public information regarding the Company.

23. To discharge their duties, the officers and directors of Aevex were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Aevex were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b) Exercise good faith to ensure that the Company operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**Additional Duties of the Audit Committee Defendants**

24. In addition to the duties discussed above with respect to all of the Individual Defendants, the Audit Committee Defendants owed specific duties to Aevex under the Audit Committee Charter ("Audit Charter"). Among other things, the Audit Charter charges the Audit Committee Defendants with the following authority and responsibilities, among others: to assist the Board in overseeing: (i) the integrity of Aevex's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the Company's independent auditor's qualifications and independence; and (iv) the performance of the Company's independent auditor and

internal audit function.

25. Specifically, the Audit Charter states the following, in relevant part:

The Audit Committee shall have the following authority and responsibilities:

* * *

7. Internal Controls: To review with management, internal audit and the Company's independent auditor, the adequacy and effectiveness of the Company's internal control over financial reporting and disclosure controls and procedures, including any significant deficiencies, material weaknesses or other major issues in the design or operation of, and any material changes in, the Company's controls and any special audit steps adopted in light of any material control deficiencies, and any fraud involving management or other employees with a significant role in such internal controls, and review and discuss with management and the Company's independent auditor disclosure relating to the Company's controls, management's and the independent auditor's report on the effectiveness of the Company's internal control over financial reporting and the required management certifications to be included in or attached as exhibits to the Company's annual report on Form 10-K or quarterly report on Form 10-Q, as applicable.

8. Risk Oversight: To review and discuss with management the risks faced by the Company and the policies, guidelines and process by which management assesses and manages the Company's risks, including the Company's major financial risks exposures. . . and the steps management has taken to monitor and control such exposures.

9. Annual Financials: To review and discuss with the Company's independent auditor and management the Company's annual audited financial statements (including the related notes), the form of audit opinion to be issued by the independent auditor on the financial statements and the disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" to be included in the Company's annual report on Form 10-K before the Form 10-K is filed. The Audit Committee shall recommend to the Board whether the audited financial statements should be included in the Company's annual report on Form 10-K.

10. Quarterly Financials: To review and discuss with the Company's independent auditor and management the Company's quarterly financial

statements (including the related notes) and the disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" to be included in the Company's quarterly report on Form 10-Q before the Form 10-Q is filed.

11. Earnings Releases: To review and discuss with management and the Company's independent auditor: (1) the Company's earnings releases, including the type of information to be included and its presentation and the use of any pro forma, adjusted or other non-GAAP financial information; and (2) any financial information and earnings guidance provided to analysts and ratings agencies, including the type of information to be disclosed and type of presentation to be made. . . .

12. Financial Statements Issues: To review with management and the Company's independent auditor: (1) any major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, (2) analyses prepared by management setting forth significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including analyses of the effects of alternative GAAP methods on the Company's financial statements, (3) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements, (4) consideration of the judgment of both management and the independent auditor about the quality, not just the acceptability, of accounting principles and (5) the completeness and clarity of the disclosures in the financial statements.

* * *

20. Code of Business Conduct and Ethics: To monitor compliance with the Company's Code of Business Conduct and Ethics (the "Code"), to investigate any alleged breach or violation of the Code, and to enforce the provisions of the Code.

* * *

22. Legal Compliance: To review, with the Chief Legal Officer and outside legal counsel, legal and regulatory matters relating to the Company and its subsidiaries that could have a significant impact on the Company's financial statements; to review the Company's compliance with applicable laws and regulations; and to review and oversee the

Company's policies, procedures and programs designed to promote and monitor legal and regulatory compliance and sustainability.

26. The conduct of the Individual Defendants alleged herein involves a violation of their obligations as directors and/or officers of Aevex, the absence of good faith on their part, and a disregard for their duties to the Company and its stockholders, all of which the Individual Defendants were aware, or should have been aware, posed a substantial risk of serious injury to the Company.

## V. SUBSTANTIVE ALLEGATIONS

### A. Background

27. Aevex is a military technology contractor. It designs and manufactures unmanned aerial and surface vehicles and provides AI-enabled intelligence, surveillance, and reconnaissance services.

28. Private equity firm Madison acquired a majority stake in Aevex in 2020 and by the time of Aevex's April 2026 IPO, Madison owned 100% of Aevex's common stock.

29. On April 15, 2026, Defendants filed an amended registration statement with the SEC on Form S-1/A. Five days later, on April 20, 2026, Defendants filed a final prospectus dated April 16, 2026, with the SEC on Form 424B4, which, together with the registration statement, formed the IPO Offering Documents.

30. Each of the IPO Offering Documents state Madison's pre- and post-IPO ownership stake and characterize Aevex as a "controlled company" within the meaning of both the Sarbanes-Oxley Act of 2002 and the NYSE's corporate governance standards.

31. Significantly, the IPO Offering Documents state that Madison would not sell any shares of Aevex Class A common stock in the IPO and that it would be subject to a 180-day "lock-up," meaning it could not sell any Class A common stock—or exchange or convert any other shares like Class B into Class A and then sell those Class

A shares—for 180 days after the date of the prospectus, until October 13, 2026. A 180-day lock-up period is typical in an initial public offering and is designed to reassure investors that corporate insiders and significant investors—like Madison—cannot sell their stake in the company and flood the market with shares, which would likely depress the company's stock price.

32. However, Aevex's IPO Offering Documents stated there were "limited exceptions" to the lock-up provision: the 180-day lock-up could be abrogated "with the prior written consent of at least two of the three [underwriter] Representatives"—*i.e.*, two of Goldman, BofA, or Jefferies.

33. Further, the IPO Offering Documents discussed a "Registration Rights Agreement" that Aevex and Madison "intend to enter into," which, following "[the] initial public offering and the expiration of any related lock-up period," would allow Madison to "require [Aevex] to register under the Securities Act shares of Class A common stock directly or indirectly owned by it or issuable to it upon exchange of LLC Units." In other words, Madison could compel the Company to sell Madison's Class A common stock to the public, either by directly selling those shares and/or indirectly by exchanging Madison's "LLC Units" for Class A common stock, but only after "the expiration of any related lock-up period."

34. On or about April 17, 2026, Aevex went public via IPO and through the Underwriters and ultimately sold 18,400,000 shares of common stock to the public pursuant to the IPO Offering Documents. The Company earned about $346 million from the IPO, while the underwriters earned over $22 million. Madison earned nothing from the IPO but continued to own 77.5% of Aevex's common stock.

35. On information and belief, however, and unbeknownst to the investing public at the time of the IPO, Madison, the Individual Defendants, and the Underwriters had a pre-arranged plan to waive the 180-day lock-up period to shortly thereafter effectuate an SPO in which Madison would dispose of a significant portion of its Aevex holdings and earn over $200 million, while the Underwriters would share over

$8 million in additional fees.

**B. The Individual Defendants Cause the Company to Issue Materially Misleading Statements**

36. The IPO Offering Documents contained the following provision explaining Madison's 180-day "lock-up":

> **Lock-Up Agreements**
>
> We, each of our officers and directors and other stockholders and optionholders owning substantially all of our Class A common stock and options or other securities to acquire Class A common stock have agreed that, *without the prior written consent of the Representatives on behalf of the underwriters, we and they will not, subject to limited exceptions, directly or indirectly sell or dispose of any of the shares of Class A common stock or securities convertible into or exchangeable for, or that represent the right to receive, shares of common stock, including LLC Units, during the period from the date of the first public filing of the registration statement on Form S-1 filed in connection with this offering continuing through the date that is 180 days after the date of this prospectus*. **The lock-up restrictions and specified exceptions are described in more detail under "Underwriters." Any two of the three Representatives may, in their discretion, release all or any portion of the securities subject to these lock-up agreements. See "Underwriters."**

(Emphasis added).

37. Similarly, in discussing the forthcoming "Registration Rights Agreement," the IPO Offering Documents framed any requirement by Madison that Aevex hold another offering as contingent upon the expiration of the 180-day "lockup" period:

> **Registration Rights Agreement**
>
> We intend to enter into the Registration Rights Agreement with our Principal Stockholder, in connection with this offering. The Registration Rights Agreement will provide our Principal Stockholder certain registration rights whereby, following our initial public offering and *the expiration of any related lock-up period*, our Principal Stockholder can require us to register under the Securities Act shares of Class A common stock directly or indirectly owned by it or issuable to it upon exchange of LLC Units. The Registration Rights Agreement will also provide for piggyback registration rights for our Principal Stockholder. See "Certain Relationships and Related Party Transactions—Registration Rights Agreement."

(Emphasis added).

38. The above statements in paragraphs ¶¶36–37 were materially false and/or misleading and contained material omissions at the time they were made. Specifically, the statements conveyed a commitment to follow a 180-day "lock-up" and therefore prevent Madison from selling its Class A common stock or converting or exchanging its Class B or LLC Units into Class A common stock for public sale until at least October 13, 2026, while simultaneously concealing a pre-arranged plan between Madison and the Underwriters to prematurely abrogate that commitment and allow for an SPO shortly after the IPO. Through that SPO, Madison would earn over $200 million and the Underwriters would share in a further $8-plus million in fees.

### C. The Truth Emerges

39. After the market closed on June 1, 2026, just 46 days after the date of the IPO's prospectus, Defendants filed a registration statement with the SEC on Form S-1 announcing the Company's intention to sell eight million more shares of Class A common stock to the investing public via an SPO. Four days later, on June 5, 2026, Defendants filed a final prospectus, dated June 3, 2026, with the SEC on Form 424B4, which, together with the registration statement, formed the SPO Offering Documents.

40. On or about June 3, 2026, Defendants sold eight million shares of Aevex's Class A common stock to the investing public at $27.00 per share through the same Underwriters that effectuated the IPO.

41. According to the SPO Offering Documents, at least two of the Underwriters had "agreed to waive . . . the lock-up restrictions" and allow for the sale of Madison's Aevex holdings. This disclosure, coming just over a month after the IPO, revealed the existence of Defendants' undisclosed pre-arranged plan to waive Madison's "lock-up" restrictions.

42. Moreover, of the eight million shares of Class A common stock sold in the SPO, 2,273,843 shares would be sold from Madison's Class A holdings, while the other 5,726,157 Class A shares sold in the offering would be newly issued shares, the

proceeds of which Aevex would use to purchase an equivalent number of Madison's other holdings in Aevex, including Madison's Class B common stock and "LLC Units." Therefore, the *entirety* of the SPO's net proceeds—$207.9 million—went to Madison and Aevex earned *zero* from the SPO, while the Underwriters shared in over $8 million more in fees.

43. The market reacted swiftly and negatively to these disclosures. In reaction to the after-market filing of the June 1, 2026 registration statement, on June 2, 2026, Aevex's Class A common stock fell approximately 16% against the prior day's closing price, wiping out over $700 million in market capitalization. And in response to the pre-market filing of the final prospectus on June 5, 2026, Aevex's common stock fell a further 7% that day, erasing about $200 million more in market capitalization.

## VI. <u>DAMAGES TO THE COMPANY</u>

44. As a direct and proximate result of the Defendants' conduct, Aevex has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a. Any funds paid to settle the Securities Class Action;

b. Costs incurred from compensation and benefits paid to the Defendants who have breached their duties to Aevex; and

c. Loss of market capital due to the wrongdoing alleged herein.

45. In addition, Aevex's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. Upon information and belief, the Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

46. The actions complained of herein have irreparably damaged Aevex's corporate image and goodwill. For at least the foreseeable future, Aevex will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public,

such that Aevex's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

47. Plaintiff brings this action derivatively in the right and for the benefit of Aevex to redress injuries suffered, and to be suffered, by Aevex as a direct result of the wrongdoing alleged herein. Aevex is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

48. Plaintiff will adequately and fairly represent the interests of Aevex in enforcing and prosecuting its rights.

49. Plaintiff has continuously been a shareholder of Aevex at times relevant to the wrongdoing complained of and is a current Aevex shareholder.

50. When this action was filed, Aevex's Board of Directors consisted of the Director Defendants. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

51. Defendant Raduenz cannot disinterestedly and independently consider a demand for action. As founder of Aevex and as the Company's former CEO, Defendant Raduenz maintains strong personal and business interests in the perceived business and reputational health of the Company. Any investigation into potential wrongdoing on the part of himself and the other Individual Defendants will threaten that perception. Further, Defendant Raduenz is a primary issuer of the misleading statements alleged herein that are the subject of the Securities Class Action. For these reasons, Defendant Raduenz faces a substantial likelihood of liability, is disinterested, and thus demand is futile.

52. Defendant Wells cannot disinterestedly and independently consider a demand for action. As the Company's current CEO, Wells depends on the Company for his lucrative employment and compensation. As any investigation into wrongdoing

on the part of himself and the other Individual Defendants will necessarily risk that employment and compensation, Defendant Wells is not disinterested. Further Defendant Wells is a primary issuer of the misleading statements alleged herein that are the subject of the Securities Class Action. For these reasons, Defendant Wells faces a substantial likelihood of liability, is disinterested, and thus demand is futile.

53. Demand is additionally excused as to Defendants Raduenz and Wells because they personally signed the IPO Offering Documents and therefore personally issued the misleading disclosures that are subjecting the Company to liability in the Securities Class Action, and that perpetuated the scheme alleged herein. Defendants Raduenz and Wells could not disinterestedly and independently consider a demand to investigate their own mind state regarding the misleading statements issued personally by them.

54. Demand is additionally excused as to Defendants Levitan and Spacapan because of their direct ties to Madison, a direct beneficiary who profited more than $200 million off of the misdeeds alleged herein and Defendant in the Securities Class Action. Defendants Levitan and Spacapan could not disinterestedly and independently consider a demand to investigate the misleading statements and omission which they directly and substantially profited from.

55. During the wrongdoing alleged herein, the Board's Audit Committee was comprised of the Audit Committee Defendants (Feldmann, Klein, and Spacapan). These three Audit Committee Defendants could not disinterestedly and independently consider a demand for action in connection with the allegations herein for at least the reason that they knew of the misleading nature of the Company's statements and breached their fiduciary duties by knowingly failing correct these omissions and statements. Demand is therefore excused as to Feldmann, Klein, and Spacapan on this basis as well.

56. A majority of the Board are also legally incapable of suing Madison or the Underwriters without self-incrimination or breaching their duties to Madison.

57. Levitan (Managing Director) and Spacapan (Vice President) are senior employees of Madison. Under Delaware law, dual fiduciaries owe an unyielding duty of loyalty to their employer and cannot impartially evaluate a demand to sue Madison, which was the sole beneficiary of the $207.9 million SPO proceeds.

58. As CEO, Wells's compensation is explicitly tied to performance targets set in coordination with Madison. Because Madison controls 77.5% of Aevex's voting stock and holds 100% board designation rights, Wells is economically dependent on Madison and cannot independently evaluate suing the entity that controls his employment and compensation.

59. Raduenz (Executive Chairman) and Wells (CEO) also personally signed the IPO offering documents containing the false 180-day lock-up representations. Both are already named defendants in the parallel Securities Class Action. Suing Madison or the Underwriters requires alleging and proving the existence of an undisclosed, pre-arranged lock-up waiver scheme, which would directly expose Raduenz and Wells to personal liability for breach of fiduciary duty.

60. Under the Audit Committee Charter, Feldmann, Klein, and Spacapan were charged with overseeing disclosure controls, financial risk, and SEC filing integrity. Pursuing claims against Madison or the Underwriters for an improper lock-up waiver scheme would require the Audit Committee directors to concede that they knowingly or recklessly permitted misleading public disclosures, exposing themselves to bad-faith breach of fiduciary duty and disclosure liability.

61. The Company's claim against the Underwriters (Goldman Sachs, BofA, and Jefferies) for unjust enrichment rests on showing that the Underwriters knowingly participated in a pre-arranged plan to waive the lock-up in exchange for $8+ million in SPO fees. The Board cannot prove the Underwriters' wrongful conduct without establishing that the Company's Board and officers collaborated in the deceptive scheme, which would self-incriminate and expose the Board to a substantial likelihood of personal liability.

62. In addition, the Underwriters were selected and retained under Madison's direction when Madison owned 100% of Aevex. The Madison-affiliated and Madison-beholden directors (Levitan, Spacapan, Wells) cannot impartially authorize litigation against the investment banks that served as the primary transaction vehicle for Madison's $207.9 million payout.

## COUNT I

### (Against the Individual Defendants for Breach of Fiduciary Duty)

63. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64. The Individual Defendants each owe and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Aevex's business and affairs, particularly with respect to issues as fundamental as public disclosures.

65. The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Aevex.

66. In breach of their fiduciary duties owed to Aevex, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

67. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report the Company's overall prospects.

68. The Audit Committee Defendants further breached their fiduciary duty of loyalty and good faith by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions. The Audit Committee

Defendants completely and utterly failed in their duty of oversight and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

69. As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Aevex has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, Defendants are liable to the Company.

70. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

**COUNT II**

**(Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty)**

71. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72. By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

73. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

**COUNT III**

**(Against the Individual Defendants for Waste)**

74. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75. As a result of the misconduct described above, the Individual Defendants have wasted corporate assets by forcing the Company to expend valuable resources in defending itself in the ongoing litigation and investigations detailed herein, in addition

to any ensuing costs from a potential settlement or adverse judgment or any penalties, fines, or other monetary penalties imposed related thereto.

76. Further, as a result of the failure to allow the Company to implement adequate internal and financial controls, the Individual Defendants have caused Aevex to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duties.

77. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

78. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

**COUNT IV**

**(Against the Individual Defendants for Unjust Enrichment)**

79. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80. By their wrongful acts, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Aevex. The Individual Defendants were unjustly enriched as a result of the hundreds of thousands or millions of dollars' worth in compensation paid to them without basis and while they were breaching fiduciary duties owed to Aevex.

81. Plaintiff, as a stockholder and representative of Aevex, seeks restitution from the Individual Defendants and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and fiduciary breaches.

82. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

**COUNT V**

**(Against the Securities Defendants for Contribution Pursuant to the Exchange Act and the Securities Act)**

83. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84. Aevex and the Securities Defendants are named as defendants in the Securities Class Action, which asserts claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Aevex and the Securities Defendants.

85. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole, or in part, due to the Securities Defendants' willful and/or reckless violations of their obligations as officers and/or directors of Aevex. The Company is entitled to receive contribution from the Securities Defendants in connection with the Securities Class Action against the Company currently pending in this Court.

86. The Securities Defendants, as directors and/or officers, and otherwise, had the power and/or ability to, and did, directly or indirectly control or influence the Company's general affairs, including the content of public statements about Aevex, and had the power and/or ability directly or indirectly to control or influence the specific corporate statements and conduct alleged that violated Sections 10(b) and 20(a) of the Exchange Act and Sections 11, 12, and 15 of the Securities Act.

87. Accordingly, the Securities Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), as to which there is a private right of action for contribution; Section 21D of the Exchange Act, 15 U.S.C. §78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act; Section 11(f)(1) of the Securities Act, 15 U.S.C. § 77k(f)(1), which expressly provides a private right of action for contribution; and Section 15, 15 U.S.C. § 77o, which imposes joint and several liability on controlling persons for underlying Section 11 violations.

88. As such, Aevex is entitled to receive all appropriate contribution from the Securities Defendants.

89. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

**COUNT VI**

**(Against Madison For Section 15 Control Person Liability)**

90. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

91. This Count is brought pursuant to Section 15 of the Securities Act (15 U.S.C. § 77o) against Madison.

92. Nominal Defendant Aevex and the Securities Defendants committed primary violations of Section 11 of the Securities Act by issuing materially false and misleading statements in the IPO Offering Documents. Specifically, the IPO Registration Statement and Prospectus represented that Madison was bound by a 180-day lock-up agreement restricting share sales until October 13, 2026, while concealing a pre-arranged plan to prematurely waive the lock-up and execute a SPO.

93. At the time of the IPO and the issuance of the false and misleading offering documents, Madison was a controlling person of Aevex within the meaning of Section 15 of the Securities Act. Madison owned 100% of Aevex's voting stock pre-IPO and 77.5% post-IPO, maintained contractual rights to designate 100% of Aevex's Board, placed two of its own senior executives (Levitan and Spacapan) on the Board, and tied CEO Roger Wells's compensation to Madison-defined targets.

94. Madison possessed and actually exercised both general operational control over Aevex and direct power to control the specific activity upon which the underlying Section 11 violation was predicated—namely, the content of the IPO Offering Documents and the decision to prematurely waive the lock-up agreement.

95. As a direct result of the Section 11 primary violations and Madison's control over Aevex, Madison wrongfully orchestrated the SPO, enabling it to pocket $207.9 million in net proceeds while exposing Aevex to massive litigation liability, reputational damage, and loss of market capitalization.

96. Pursuant to Section 15 of the Securities Act, Madison is jointly and severally liable for the primary violations committed by Aevex and the Securities

Defendants, and Aevex is entitled to recover all damages and wrongfully acquired proceeds resulting from Madison's control person liability.

## COUNT VII

### (Against Madison and the Underwriters for Unjust Enrichment)

97. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98. By their wrongful acts, Madison and the Underwriters were unjustly enriched at the expense of and to the detriment of Aevex.

99. Madison and the Underwriters obtained a significant financial benefit at the direct expense of Aevex through an improper and undisclosed scheme to bypass the 180-day IPO lock-up period.

100. Madison was enriched by receiving $207.9 million in net proceeds from the June 2026 SPO (representing 100% of the offering's net proceeds) while Aevex received zero proceeds despite issuing millions of shares and suffering a catastrophic loss in market value upon public disclosure of the lock-up waiver.

101. The Underwriters were enriched by receiving over $8 million in additional fees for underwriting the SPO (contributing to over $30 million total in fees from Aevex's offerings) in exchange for agreeing to waive the lock-up restrictions pursuant to their pre-arranged plan with Madison.

102. Madison and the Underwriters obtained these financial benefits through deceptive conduct, breach of fiduciary obligations, and misleading public disclosures.

103. It would be unconscionable and contrary to equity for Madison and the Underwriters to retain the proceeds and fees acquired through their improper conduct at the expense of Aevex.

104. Plaintiff, on behalf of Aevex, seeks an order of restitution and disgorgement requiring Madison to disgorge the $207.9 million in wrongfully acquired SPO proceeds and requiring the Underwriter Defendants to disgorge all underwriting fees earned in connection with the SPO.

105. Plaintiff, on behalf of Aevex, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Aevex, demands judgement as follows:

A. Declaring that Plaintiff may maintain this action on behalf of Aevex and that Plaintiff is an adequate representative of the Company;

B. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and fraud, and against the Securities Defendants for contribution and indemnification;

C. Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Aevex;

D. Directing Aevex to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Aevex and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

i. a proposal to strengthen the Company's controls over accounting and financial reporting;

ii. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

iii. a proposal to strengthen Aevex's disclosure controls and oversight of disclosure procedures to ensure material information is adequately and timely disclosed to the SEC and the public;

iv. a provision to permit the stockholders of Aevex to nominate at least three candidates for election to the Board;

v. a proposal to appoint additional independent board members with established reputations and substantial experience in governance, risk, and compliance issues; a proposal to enhance and/or augment the audit, risk and compliance committees of the Board to oversee internal controls and compliance processes;

vi. a proposal to create the role(s) of Chief Compliance Officer, Chief Risk Officer, and/or Chief Legal Officer and to assure that the Chief Compliance Officer, Chief Risk Officer, and/or Chief Legal Officer and other company leadership have (a) necessary subject matter and regulatory expertise; (b) direct reporting authority to the Board; and (c) adequate autonomy and resources to carry out their responsibilities; and

vii. a proposal to review and implement revised codes of conduct, policies and procedures, training, integrity hotlines, auditing and monitoring processes and procedures.

E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Aevex has an effective remedy;

F. Awarding Aevex restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

G. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Respectfully Submitted,

Dated: September 11, 2026

**JOHNSON FISTEL, PLLP**

By: */s/ Kristen O'Connor*
KRISTEN O'CONNOR

Frank J. Johnson (SBN 174882)
Kristen O'Connor, Esq. (SBN 305113)
Anthony E. Mance (SBN 267946)
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 363-8326
Email: frankj@johnsonfistel.com
kristeno@johnsonfistel.com
anthonym@johnsonfistel.com

**JOHNSON FISTEL, PLLP**
Michael I. Fistel, Jr. (*pro hac vice* pending)
William W. Stone (*pro hac vice* pending)
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (619) 363-8326
Email: michaelf@johnsonfistel.com
williams@johnsonfistel.com

**HERMAN JONES LLP**
John C. Herman (*pro hac vice* to be sought)
Candace N. Smith (*pro hac vice* to be sought)
Carlton R. Jones (*pro hac vice* to be sought)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
Email: jherman@hermanjones.com
csmith@hermanjones.com
cjones@hermanjones.com

*Counsel for Plaintiff Sophia Cohen*